## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:

ANTHIA R. HILL, *et al.,*

        Debtors.

Chapter 7
Honorable Jacqueline P. Cox
Case Nos. 16-17113
(Jointly Administered)

---

FRANCES GECKER, not individually, but
solely in her capacity as chapter 7 trustee of the
bankruptcy estates of Anthia R. Hill and
Network Salon Services, LLC and
BATHHOUSE LUXURY IMPORTS, LLC,

        Plaintiffs,

v.

CAP CALL, LLC, a Delaware limited liability
company, ACH CAPITAL, LLC, a Delaware
limited liability company, GMA USA, LLC, a
Pennsylvania limited liability company, and
GMA MCA TRACKER, LLC, a Pennsylvania
limited liability company,

        Defendants.

Adv. No. 17-00066

**DEFENDANTS' ANSWER TO
PLAINTIFFS' AMENDED
ADVERSARY COMPLAINT**

---

NOW COME Defendants, by and through their attorneys, Varnum LLP, and for their

Answer to Plaintiffs' Amended Adversary Complaint, state as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to section 1334 of Title 28 of

the United States Code. This is a core proceeding pursuant to section 157(b)(2)(A), (B), (H) and

(F) of Title 28 of the United States Code and the Trustee consents to the entry of a final order.

**ANSWER: Paragraph No. 1 states a legal conclusion to which no response is required.**

2.      Venue is proper in this district pursuant to sections 1408 and 1409 of Title 28 of the United States Code. This Court has personal jurisdiction over Cap Call, ACH Capital, GMA USA, and Tracker pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

**ANSWER: Paragraph No. 2 states a legal conclusion to which no response is required.**

## PARTIES AND BACKGROUND

3.      On May 20, 2016 (the "Petition Date"), Network Salon and Anthia R. Hill filed petitions under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 3 and therefore denies them.**

4.      Plaintiff Frances Gecker is the chapter 7 trustee of the bankruptcy estates of Network Salon and Anthia R. Hill and is duly qualified and appointed under 11 U.S.C. § 701(a)(1) by the Office of the United States Trustee.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 4 and therefore denies them.**

5.      Network Salon was a limited liability company organized under Illinois law.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 5 and therefore denies them.**

6.      Anthia R. Hill is an Illinois citizen.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 6 and therefore denies them.**

7.    Bathhouse was a limited liability company organized under Illinois law. Ms. Hill was Bathhouse's sole member and manager.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 7 and therefore denies them.**

8.    Cap Call is a Delaware limited liability company with its principal place of business at 122 E. 42nd St., Suite 2112, New York, NY 10168.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 8 and therefore denies them.**

9.    On information and belief, ACH Capital is a Delaware limited liability company registered to do business in the state of New York with its principal place of business at 11 Broadway, Suite 814, New York, NY 10004.

**ANSWER:    Admitted. However ACH Capital's address: 90 Broad St., 16th Floor, New York, NY 10004.**

10.    On information and belief, GMA USA is a Pennsylvania limited liability company with its principal place of business at 1145 Broadway Street, 2nd Floor East, McKeesport, PA 15035.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 10 and therefore denies them.**

11.    On information and belief, Tracker is a Pennsylvania limited liability company with its principal place of business at 1145 Broadway Street, 2nd Floor East, McKeesport, PA 15035.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 11 and therefore denies them.**

**Network Salon's Business**

12.    Network Salon was in the beauty supply business. It was a distributor of professional salon products, such as shampoo, hairspray, and conditioner, to independent salons and hairdressers.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 12 and therefore denies them.**

13.    Brian and Anthia Hill, a married couple, founded Network Salon in 2004 when Mr. Hill, who had made a career in the beauty supply business, lost his job shortly after being transferred from Los Angeles to Chicago. Mr. Hill's job had been the family's sole source of income.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 13 and therefore denies them.**

14.     Ms. Hill agreed to help Mr. Hill with the new business by packing and shipping customer orders.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 14 and therefore denies them.**

15.     Mr. Hill handled all of Network Salon's finances and other operations.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 15 and therefore denies them.**

16.     Mr. Hill handled all the family's personal finances.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 16 and therefore denies them.**

17.     Network Salon sold most of its products on a very narrow margin and sometimes agreed to sell and ship products at a net loss to promote a manufacturer's product line or to develop relationships with new customers.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 17 and therefore denies them.**

18.     While Network Salon generated substantial revenue, it earned minimal net income.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 18 and therefore denies them.**

**Mr. Hill's Death**

19.     Until sometime in late 2010, Mr. Hill supported his family of four and the Network Salon business by working as a consultant for another beauty supply distributor.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 19 and therefore denies them.**

20.     Near the end of 2010, Network Salon began to generate sufficient income to allow Mr. Hill to leave his consulting job and run Network Salon full time.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 20 and therefore denies them.**

21.     Shortly afterwards, in early 2011, Mr. Hill began to feel ill.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 21 and therefore denies them.**

22.     In March 2011, Mr. Hill received a diagnosis of Stage IV pancreatic cancer. Despite multiple surgeries, chemotherapy, and other treatment, Mr. Hill died three months later, in June 2011, at the age of 43.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 22 and therefore denies them.**

23.    Because Mr. Hill did not have health insurance, Ms. Hill was required to pay all the expenses of his catastrophic illness in an amount exceeding $400,000.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 23 and therefore denies them.**

**The Slide into Bankruptcy**

24.    While Mr. Hill was alive, Network never borrowed money or sold its assets, other than in the ordinary course of its business of selling beauty supplies.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 24 and therefore denies them.**

25.    While Mr. Hill was alive, he kept the business going by using cash from his outside earnings.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 25 and therefore denies them.**

26.    After Mr. Hill's death, Network Salon became the sole means of support for Ms. Hill and her two children. Ms. Hill, who never drew a salary, paid all the family's basic living expenses through Network Salon.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 26 and therefore denies them.**

27.    When Mr. Hill died, Ms. Hill became Network Salon's manager and sole member, responsible for all its operations and business affairs, including its financial operations.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 27 and therefore denies them.**

28.    Ms. Hill has no formal education and never learned basic arithmetic. She cannot perform a multiplication operation; does not know how to calculate a percentage; and, even today, does not fully comprehend what a percentage means.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 28 and therefore denies them.**

29.    Ms. Hill had never handled finances prior to her husband's death.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 29 and therefore denies them.**

30.    Ms. Hill never had a bank account until, in the month before his death, Mr. Hill took her to the bank and opened one for her.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 30 and therefore denies them.**

31.     During the last three months of Mr. Hill's life, he was too ill and too weak to manage financial affairs for his family or for Network Salon. He was also too ill to engage in sales activities for Network Salon.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 31 and therefore denies them.**

32.     During Mr. Hill's illness the business began to experience liquidity issues.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 32 and therefore denies them.**

33.     After Mr. Hill's death and Ms. Hill's payment of his final expenses, Network Salon's liquidity issues became worse.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 33 and therefore denies them.**

34.     Sometime in 2013, Network Salon lost its most profitable product, Lilash, an eyelash enhancer, after Lilash's manufacturer lost an unfair competition lawsuit to Allergan, Inc., the manufacturer of the prescription eyelash enhancer Latisse. Until then, Ms. Hill relied on the profits from Lilash sales to keep Network Salon going.

**ANSWER:     To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 34 and therefore denies them.**

35.      Ms. Hill tried but was unable to obtain traditional financing because she had no credit history. During Mr. Hill's life, he carried out all financial transactions, both personal and business, in his name only.

**ANSWER:      To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 35 and therefore denies them.**

36.      By January 2013, Network Salon lacked the cash flow to make regular payroll.

**ANSWER:      To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 36 and therefore denies them.**

37.      In January 2013, Network Salon lacked the funds to pay its vendors and for a while, the bank covered its checks, creating overdrafts for which Network Salon incurred overdraft fees.

**ANSWER:      To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 37 and therefore denies them.**

38.      Around that time, Ms. Hill was approached by individuals offering Network Salon what she understood to be business loans requiring minimal paperwork and with the loan proceeds available in days.

**ANSWER:      To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 38 and therefore denies them.**

39.    From or about January 2013 through the Petition Date, Network Salon and
Bathhouse, a related entity, borrowed, and Anthia Hill personally guaranteed, millions of dollars
from more than a dozen non-traditional lenders, who refer to themselves as Merchant Cash
Advance ("MCA") Providers ("MCA Provider(s)"), at high interest rates, often using the
proceeds from one loan to keep payments current on other loans or to repay older loans.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or
information sufficient to form a belief as to the truth of the allegations contained in
Paragraph No. 39 and therefore denies them.**

40.    In mid-January 2013, Network Salon entered into its first MCA Agreement,
which Ms. Hill believed to be a loan. On January 15, 2013, MCA Provider Merchant's Capital
Advance ("Merchant's") deposited $100,705 into Network Salon's operating account.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or
information sufficient to form a belief as to the truth of the allegations contained in
Paragraph No. 40 and therefore denies them.**

41.    On January 18, 2013, Merchant's began debiting the operating account $1,090
every business day. Ms. Hill soon realized that Network Salon, which had a net operating loss of
$193,345 in tax year 2013, would not be able to continue the daily payments and sought
additional MCAs to cover them.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or
information sufficient to form a belief as to the truth of the allegations contained in
Paragraph No. 41 and therefore denies them.**

42. Over the six months prior to the Petition Date, Network Salon had as many as thirteen concurrent MCAs payable to at least six different MCA providers and was paying approximately $30,000 each business day.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 42 and therefore denies them.**

**Bathhouse**

43. Ms. Hill formed Bathhouse on May 13, 2014.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 43 and therefore denies them.**

44. Although Ms. Hill hoped to sell bath products through Bathhouse, Bathhouse never had any assets, operations, customers, transactions, income, or receivables.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44 and therefore denies them.**

45. Ms. Hill's interest in Bathhouse became property of her chapter 7 estate when she filed her petition.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 45 and therefore denies them.**

46. The Trustee succeeds to Ms. Hill's interests in Bathhouse by operation of law.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 46 and therefore denies them.**

**The LQD Loans**

47.    In September 2015, Network Salon owed more than $450,000.00 to MCA Providers.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 47 and therefore denies them.**

48.    On September 22, 2015, Network Salon and Ms. Hill borrowed $470,000.00 (the "First LQD Loan"), from LQD Business Finance LLC ("LQD") which was memorialized by the LQD Business Finance LLC Loan Agreement (the "First LQD Loan Agreement"). A copy of the First LQD Loan Agreement is attached hereto as Exhibit A.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 48 and therefore denies them.**

49.    In the First LQD Loan Agreement, Network Salon and Ms. Hill gave representations, covenants, and warranties that Network Salon would not "sell, dispose, convey or otherwise transfer any of its future receivables" or incur any debt on the business without LQD's prior written consent. First LQD Loan Agreement, § 13(c).

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 49 and therefore denies them.**

50.     Network Salon and Ms. Hill also agreed not to grant any security interests or liens on Network Salon's accounts receivable and other assets and prospectively to disclose the existence of any such liens or security interests. *Id*. at § 13(d).

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 50 and therefore denies them.**

51.     Section 11 of the First LQD Loan Agreement provides that breaches of representations, covenants and warranties are Events of Default.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 51 and therefore denies them.**

52.     The proceeds of the First LQD Loan were earmarked to pay $449,085.54 of Network Salon's debt to MCA Providers Complete Business Solutions Group d/b/a Par Funding ("CBSG")[1] and Fast Advance Funding (Fast Advance")[2], as identified in the First LQD Loan Agreement at Schedule A ("Schedule A").

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 52 and therefore denies them.**

53.     LQD disbursed the LQD Loan proceeds to CBSG and Fast Advance in the amounts set forth on Schedule A of the First LQD Loan Agreement.

---

[1] CBSG is the defendant in a related adversary case, *Gecker v. Complete Business Solutions Group, Inc.*, No. 17-A-00429, pending before this Court.

[2] Fast Advance Funding, LLC is a Pennsylvania limited liability company related to and associated with CBSG, doing business from CBSG's address.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 53 and therefore denies them.**

54.    The First LQD Loan was secured by substantially all of Network Salon's assets, including after-acquired property.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 54 and therefore denies them.**

55.    On September 18, 2015, LQD filed a UCC-1 financing statement with the Illinois Secretary of State perfecting its security interest.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 55 and therefore denies them.**

56.    Notwithstanding the First LQD Loan, Network Salon's liquidity issues persisted, and on November 25, 2015, Network Salon and LQD executed the Amended and Restated Loan Agreement, whereby LQD increased Network Salon's principal loan balance from $470,000.00 to $600,000.00 (the "Second LQD Loan," and with the First LQD Loan, the "Senior LQD Loans") A copy of the Second LQD Loan is attached hereto as Exhibit B.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 56 and therefore denies them.**

57.    The Senior LQD Loans are perfected and secured by a first position security interest in substantially all of Network Salon's assets, including its future receivables.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 57 and therefore denies them.**

58.    Because LQD has a valid first-priority security interest in all of Network Salon's assets and Network Salon has insufficient funds to repay LQD, all other secured creditors are undersecured creditors whose debt is treated as unsecured.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 58 and therefore denies them.**

**Cap Call**

59.    Cap Call is in the business of providing operating capital to small businesses unable to obtain financing from traditional, regulated lenders, like banks and credit unions. As set forth on Cap Call's website, "CapCall is a leader in the financial service industry for providing the fastest business lending solutions available to small and mid-sized businesses across the United States. As a DIRECT Business Financing Institution, [Cap Call] offer[s] an array of alternative business financing solutions without collateral and unnecessary fees." CAP CALL, YOUR CALL FOR CAPITAL, https://www.capcallllc.com/ (last visited Feb. 28, 2018) (italicized emphasis added; capitalized emphasis in original).

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 59 and therefore denies them.**

60.    Although it publicly refers to itself as a provider of business lending solutions, Cap Call refers to the funds it provides as MCAs and states that they are not loans.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60 and therefore denies them.**

61.    Although it publicly advertises itself as a provider of business lending solutions, Cap Call states that it is an MCA Provider and that MCAs are not loans.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 61 and therefore denies them.**

62.    On the Funding Solutions page of its website, Cap Call states, among other things, that:

> Our merchant cash advances are ideal for businesses that accept debit or credit cards and prefer flexible repayments that work with the peaks and valleys of card transactions.
> - Repayment via small, fixed percentage of daily sales
> - Minimum $15,000 per month gross sales
> - Minimum 3 months in business

*Id*. at https://www.capcallllc.com/funding-solutions/ (last visited Feb. 28, 2018). Cap Call further states that "We are able to analyze the total amount of receipts on a monthly basis and provide financing based on a percentage of that average." *Id*.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 62 and therefore denies them.**

63.    Cap Call advertises that it will fund businesses with bad credit. *Id*. at https://www.capcallllc.com/ (last visited February 28, 2018).

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 63 and therefore denies them.**

64.    Cap Call advertises that its transactions are "unsecured" and require no collateral or personal guarantees. *Id*.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 64 and therefore denies them.**

**The Bathhouse Agreements**

65.    Since about or before April 16, 2015, Cap Call has provided MCAs to Bathhouse.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 65 and therefore denies them.**

66.    At all times relevant to this adversary complaint, Cap Call was aware that Ms. Hill and Network Salon were repeat borrowers from MCA lenders.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 66 and therefore denies them.**

67.    From April 16, 2015 through October 1, 2015, Cap Call entered into at least four "Merchant Agreements" with Bathhouse in which Cap Call agreed to provide MCAs to Bathhouse (the "Bathhouse Agreements"). Copies of the Bathhouse Agreements are attached as Group Exhibit C.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 67 and therefore denies them.**

68.    In connection with each Bathhouse Agreement, and despite Cap Call's online advertising, Bathhouse and Network Salon, were required to grant Cap Call security interests in all their assets.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 68 and therefore denies them.**

69.    In connection with each Bathhouse Agreement, and despite Cap Call's online advertising, Ms. Hill was required to grant a personal guaranty that was expressly a "guarantee of payment."

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 69 and therefore denies them.**

70.    In connection with each Bathhouse Agreement, Ms. Hill was required to execute a Confession of Judgment on her own behalf as well as for Bathhouse and Network Salon.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 70 and therefore denies them.**

71.    At all times relevant, Cap Call was aware that Bathhouse had no operations, customers, transactions, income, or receivables because Ms. Hill told it so.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 71 and therefore denies them.**

72.    In the Bathhouse Agreements, Cap Call purported to purchase all of Bathhouse's future accounts receivable.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 72 and therefore denies them.**

73.    Section 1.9 of each Bathhouse Agreement provides that Bathhouse's payments to Cap Call "shall be conditioned upon [Bathhouse's] sale of products and services and the payment therefore (sic) by [Bathhouse]'s customers.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 73 and therefore denies them.**

74.    As Cap Call was aware, Bathhouse did not sell any products or services and had no customers from whom to receive payment.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 74 and therefore denies them.**

75.    The Bathhouse Agreements each required payment by debits made each business day through the Automated Clearing House administered by the National Automated Clearinghouse Association ("NACHA Debits")[3] from a designated bank account. Bathhouse

---

[3] NACHA Debits are usually referred to as ACH debits but are defined as NACHA Debits herein to avoid confusion with defendant ACH Capital.

designated its account at Fifth Third Bank ending in the numbers 6289 (the "Bathhouse Account").

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 75 and therefore denies them.**

76.    Prior to April 16, 2015, when Ms. Hill sought an MCA from Cap Call for Network Salon, Cap Call advised her to enter into its "Merchant Agreements" through Bathhouse and requested that she open a bank account for Bathhouse to conceal Cap Call's transactions from Network Salon creditors.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 76 and therefore denies them.**

77.    Even though Bathhouse had no operations, customers, transactions, income, or receivables, in the Bathhouse Agreement dated April 16, 2015 (the "First Bathhouse Agreement"), Cap Call purported to advance $37,000 to Bathhouse in exchange for a total of $55,130 to be repaid at the "Specified Daily Amount" of $625 every business day. Cap Call defined this "Specified Daily Amount" as 15% of Bathhouse's settlement amounts due from sales transactions.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 77 and therefore denies them.**

78.    Because Bathhouse had no sales transactions and thus owed no Specified Daily Amount, fifteen percent of its settlement amounts from sales transactions was actually zero.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 78 and therefore denies them.**

79.    Even though Bathhouse had no operations, customers, transactions, income, or receivables, in the Bathhouse Agreement dated May 28, 2015 (the "Second Bathhouse Agreement"), Cap Call purported to advance $60,000 to Bathhouse in exchange for a total of $89,400 to be repaid at the "Specified Daily Amount" of $899 every business day. Cap Call defined this "Specified Daily Amount" as 20% of Bathhouse's settlement amounts due from sales transactions.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 79 and therefore denies them.**

80.    Because Bathhouse had no sales transactions and thus owed no Specified Daily Amount, twenty percent of its settlement amounts from sales transactions was actually zero.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 80 and therefore denies them.**

81.    Even though Bathhouse had no operations, customers, transactions, income, or receivables, in the Bathhouse Agreement dated July 9, 2015 (the "Third Bathhouse Agreement"), Cap Call purported to advance $110,000 to Bathhouse in exchange for a total of $163,900 to be repaid at the "Specified Daily Amount" of $1,399 every business day. Cap Call defined this "Specified Daily Amount" as 15% of Bathhouse's settlement amounts due from sales transactions.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 81 and therefore denies them.**

82.    Because Bathhouse had no sales transactions and thus owed no Specified Daily Amount, fifteen percent of its settlement amounts from sales transactions was actually zero.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 82 and therefore denies them.**

83.    Even though Bathhouse had no operations, customers, transactions, income, or receivables, in the Bathhouse Agreement dated October 1, 2015 (the "Fourth Bathhouse Agreement"), Cap Call purported to advance $75,000 to Bathhouse in exchange for a total of $112,425 to be repaid at the "Specified Daily Amount" of $995 every business day. Cap Call defined this "Specified Daily Amount" as 15% of Bathhouse's settlement amounts due from sales transactions.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 83 and therefore denies them.**

84.    Because Bathhouse had no sales transactions and thus owed no Specified Daily Amount, fifteen percent of its settlement amounts from sales transactions was actually zero.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 84 and therefore denies them.**

85.     On information and belief, Cap Call did not provide Bathhouse with $75,000 in cash. On October 2, 2015, Cap Call deposited $74,295 into the Bathhouse Account.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 85 and therefore denies them.**

86.     Since Bathhouse had no assets, operations, customers, transactions, income, or receivables of its own, Ms. Hill transferred funds from various accounts held by Network Salon to the Bathhouse Account to cover the daily ACH debits. Frequently, the source of those funds was a Network Salon MCA from an MCA provider other than Cap Call.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 86 and therefore denies them.**

87.     Bathhouse also paid Cap Call using funds advanced by Cap Call, merely handing back the funds recently received.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 87 and therefore denies them.**

88.     On information and belief, the First Bathhouse Agreement was fully paid before September 1, 2015. On information and belief, Cap Call received transfers from Bathhouse on the First Bathhouse Agreement in the amount of $55,130 and made an $18,130 profit on the transaction. Cap Call's rate of return was 33% in less than five months.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 88 and therefore denies them.**

89.    If treated as a loan payable in three months, the interest rate under the First Bathhouse Agreement was 196% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 89 and therefore denies them.**

90.    On information and belief, the Second Bathhouse Agreement was fully paid before September 1, 2015. On information and belief, Cap Call received transfers from Bathhouse on the Second Bathhouse Agreement in the amount of $89,400 and made a $29,400 profit on the transaction. Cap Call's rate of return was 33% in three months or less.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 90 and therefore denies them.**

91.    If treated as a loan payable in three months, the interest rate under the Second Bathhouse Agreement was 196% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 91 and therefore denies them.**

92.    On information and belief, the Third Bathhouse Agreement was fully paid before September 1, 2015. On information and belief, Cap Call received transfers from Bathhouse on

the Third Bathhouse Agreement in the amount of $163,900 and made a $53,900 profit on the transaction. Cap Call's rate of return was 33% in less than two months.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 92 and therefore denies them.**

93.    If treated as a loan payable in three months, the interest rate under the Third Bathhouse Agreement was 196% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 93 and therefore denies them.**

94.    The Fourth Bathhouse Agreement was fully paid on December 11, 2015. Cap Call received transfers from Bathhouse on the Fourth Bathhouse Agreement in the amount of $112,425 and made a $37,425 profit on the transaction. Cap Call's rate of return was 67% in approximately ten weeks.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 94 and therefore denies them.**

95.    If treated as a loan payable in three months, the interest rate under the Fourth Bathhouse Agreement was 199.6% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 95 and therefore denies them.**

96.     Cap Call's rate of return on the Bathhouse Agreements is unreasonable and, given that Bathhouse had no transactions from which to specify a percentage, arbitrarily determined.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 96 and therefore denies them.**

97.     In the State of New York, whose laws govern the Bathhouse Agreements, a person is guilty of the Fraud Crime of criminal usury in the second degree, a Class E felony, when:

> not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

N.Y. PENAL LAW § 190.40 (McKinney 2018).

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 97 and therefore denies them.**

98.     The Bathhouse Agreements are criminally usurious under New York law.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 98 and therefore denies them.**

**The Network Salon Agreements**

99.    Since on or about December 10, 2015, Cap Call provided MCAs to Network Salon.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 99 and therefore denies them.**

100.    From December 10, 2015 through February 10, 2016, Cap Call entered into at least three "Merchant Agreements" with Network Salon in which Cap Call agreed to provide MCAs to Network Salon (the "Network Salon Agreements" and with the Bathhouse Agreements, the "Cap Call Agreements"). Copies of the Network Salon Agreements are attached as Group Exhibit D.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 100 and therefore denies them.**

101.    The Network Salon Agreements are governed by the laws of the State of New York.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 101 and therefore denies them.**

102.    In connection with each Network Salon Agreement, and despite Cap Call's online advertising, Network Salon was required to grant Cap Call security interests in all its assets.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 102 and therefore denies them.**

103.    In connection with each Network Salon Agreement, and despite Cap Call's online advertising, Ms. Hill was required to grant a personal guaranty.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 103 and therefore denies them.**

104.    In connection with each Network Salon Agreement, Ms. Hill was required to execute a Confession of Judgment on her own behalf as well as for Network Salon.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 104 and therefore denies them.**

105.    In the Network Salon Agreements, Cap Call purported to purchase Network Salon's future accounts receivable due to Network Salon's sale of goods and services.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 105 and therefore denies them.**

106.    The Network Salon Agreements each required payment through daily NACHA Debits from a designated bank account. Network Salon designated the Bathhouse Account.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 106 and therefore denies them.**

107.    In the Network Salon Agreement dated December 10, 2015 (the "First Network Salon Agreement"), Cap Call purported to advance $185,000 to Network Salon in exchange for a total of $277,315 to be repaid at the "Specific Daily Amount" of $2,300. Cap Call defined the "Specific Daily Amount" as 15% of Network Salon's receivables.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 107 and therefore denies them.**

108.    On information and belief, Cap Call did not provide Network Salon with $185,000 in cash. Instead, Cap Call rolled Bathhouse's remaining debt, in the amount of $66,655 into the First Network Salon Agreement. In addition, on December 11, 2015, Cap Call deposited $67,756.50 into the Bathhouse Account.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 108 and therefore denies them.**

109.    On information and belief, Cap Call retained the remaining $50,5885.50, twenty-seven percent of the total advance, as brokerage and other origination fees.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 109 and therefore denies them.**

110.    Ms. Hill transferred funds from various accounts held by Network Salon to the Bathhouse Account to allow Cap Call to make its daily ACH debits due under the Network Salon Agreements. Frequently, the source of those funds was a Network Salon MCA from an MCA Provider other than Cap Call.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 110 and therefore denies them.**

111.    Network Salon also paid Cap Call using funds advanced by Cap Call, merely handing back the funds recently received.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 111 and therefore denies them.**

112.    If paid on time and in full, the First Network Salon Agreement would yield a profit of $92,315, a 66% rate of return, to Cap Call in approximately three months.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 112 and therefore denies them.**

113.    If treated as a loan payable in three months, the interest rate under the First Network Salon Agreement was 199.6% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 113 and therefore denies them.**

114.    In the Network Salon Agreement dated February 10, 2016 (the "Second Network Salon Agreement"), Cap Call purported to advance $75,000 to Network Salon in exchange for a total of $111,750 to be repaid at the "Specific Daily Amount" of $1,299. Cap Call defined the "Specific Daily Amount" as 15% of Network Salon's receivables.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 114 and therefore denies them.**

115.    On February 12, 2108, Cap Call deposited $73,490 into the Bathhouse Account.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 115 and therefore denies them.**

116.    If paid on time and in full, the Second Network Salon Agreement would yield $36,750, a 67% rate of return, in approximately three months.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 116 and therefore denies them.**

117.    If treated as a loan payable in three months, the interest rate under the Second Network Salon Agreement was 196% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 117 and therefore denies them.**

118.    Between the First and Second Network Salon Agreements, Cap Call had a right to payment of the "Specified Percentage" of 30% of Network Salon's receivables, which Cap Call calculated as $3,599 per business day.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 118 and therefore denies them.**

119.    In the Network Salon Agreement dated March 11, 2016 (the "Third Network Salon Agreement"), Cap Call purported to advance $200,000 to Network Salon in exchange for a total of $298,000 to be repaid at the "Specific Daily Amount" of $3,547.62. Cap Call defined the "Specific Daily Amount" as 15% of Network Salon's receivables.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 119 and therefore denies them.**

120.    On March 15, 2018, Cap Call deposited $59,965 into the Bathhouse Account.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 120 and therefore denies them.**

121.    If paid on time and in full, the Third Network Salon Agreement would yield $98,000, a 67% rate of return, in approximately three months.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 121 and therefore denies them.**

122.    If treated as a loan payable in three months, the interest rate under the Third Network Salon Agreement was 199.6% annually.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 122 and therefore denies them.**

123.    Cap Call's rate of return on the Network Salon Agreements is unreasonable and arbitrarily determined.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 123 and therefore denies them.**

124.    The Network Salon Agreements are criminally usurious under New York law.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 124 and therefore denies them.**

125.    On January 17, 2017, Cap Call filed Proof of Claim No. 10-1 in Ms. Hill's case and Proof of Claim No. 10-1 in the Network Salon case, based on Ms. Hill's Confession of Judgment from the Third Network Salon Agreement, in the amount of $339,643.19.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 125 and therefore denies them.**

126.    On January 17, 2017, Cap Call filed Proof of Claim No. 11-1 in Ms. Hill's case and Proof of Claim No. 9-1 in the Network Salon case, based on Ms. Hill's Confession of Judgment from the Second Network Salon Agreement, in the amount of $92,185.53.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 126 and therefore denies them.**

**ACH Capital, LLC**

127.    ACH Capital was Cap Call's servicing agent for the First, Second, and Third Bathhouse Agreements.

**ANSWER: Admitted, to the extent that ACH Capital was simply a "payment processor" with respect to the underlying transactions and agreements. Accordingly, ACH capital had no right, title, or claim to any amount of the alleged transfers involved in this case.**

128.    Ms. Hill signed a document included in the First, Second, and Third Bathhouse Agreements authorizing ACH Capital to initiate NACHA Debits from the Bathhouse Account as they became due and payable.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 128 and therefore denies them.**

129.    Pursuant to an agreement with Cap Call, from on or about April 16, 2015 until in or about September 2015, ACH Capital initiated NACHA Debits from the Bathhouse Account each business day (the "ACH Capital Debits"), deposited the collected funds in its own accounts, and remitted them to Cap Call.

**ANSWER:  Denied.**

130.    On information and belief, ACH Capital received or retained a percentage of each ACH Capital Debit it initiated as a fee for its services.

**ANSWER:   Denied. However, ACH Capital was paid a "processing fee" by Cap Call for its services.**

131.    On information and belief, ACH Capital also received a fee of $15 for each ACH Capital Debit. *See* Appendix A: The Fee Structure, included in the First, Second, and Third Bathhouse Agreements.

**ANSWER: Denied.**

**The GMA Service Companies**

132.    GMA USA was Cap Call's servicing agent for the Fourth Bathhouse Agreement and the Network Salon Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 132 and therefore denies them.**

133.    Todd Wishnev, who directs the GMA Service Companies' day to day operations, gave the Declaration attached as Exhibit E in associated adversary proceeding *Gecker v. Core Fund Capital, LLC,* No. 17-A-00104 (the "Wishnev Declaration").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 133 and therefore denies them.**

134.    Jason Leak, Cap Call's Senior Fund Writing Manager, gave the Declaration attached as Exhibit F (the "Leak Declaration).

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 134 and therefore denies them.**

135.    The GMA Service Companies work together to provide back-office support and cash management services to MCA Providers. Wishnev Declaration, ¶ 2.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 135 and therefore denies them.**

136.    Cap Call has been the GMA Service Companies' customer since in or about September 2015. *Id.*

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 136 and therefore denies them.**

137.    Among other things, from in or about September 2015, the GMA Service Companies initiated the daily NACHA Debits from the Bathhouse Account for Cap Call (the "GMA Debits").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 136 and therefore denies them.**

138.    GMA USA maintains a bank account at Citizens Bank of Providence, Rhode Island (the "Citizens Account") into which it deposits the funds it collects for all its customers, including, since in or about September 2015, the GMA Debits. *Id.*, ¶¶ 3, 5-8.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 138 and therefore denies them.**

139.    Pursuant to their agreement with Cap Call, beginning in or about September 2015, the GMA Service Companies initiated the GMA Debits, deposited the collected funds in the Citizens Account, and remitted them to Cap Call, net of a service fee. *Id.*, ¶¶ 5-8; Leak Declaration, ¶ 5.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 139 and therefore denies them.**

140.    On information and belief, the GMA Service Companies received a percentage of each GMA Debit they initiated as a fee for their services.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 140 and therefore denies them.**

141.    On information and belief, the GMA Service Companies also received a fee of $15 for each GMA Debit. *See* Appendix A: The Fee Structure, included in the Fourth Bathhouse Agreement and each Network Salon Agreement.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 141 and therefore denies them.**

<u>**COUNT I**</u>
**Preferential Transfer 11 U.S.C. § 547(b)**
**Network Salon Agreements**
**GMA Service Companies and Cap Call**

142.    The Trustee repeats and realleges the allegations of paragraphs 1 through 141 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 141 as if fully set forth herein.**

143.    Within ninety days prior to the Petition Date (the "Preference Period"), Network Salon transferred property in which it had an interest to or for the benefit of the GMA Service Companies and Cap Call in the amount of at least $137,202.06 (the "90-Day Transfers"). A chart of the 90-Day Transfers made by Network Salon to the GMA Service Companies and Cap Call is attached as Exhibit G.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 143 and therefore denies them.**

144.    The 90-Day Transfers were made from and through the Bathhouse Account as payments on account of the Network Salon Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 144 and therefore denies them.**

145.    The GMA Service Companies initiated and collected each of the GMA Debits, by which the 90-Day Transfers were made.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 145 and therefore denies them.**

146.    The GMA Service Companies subsequently distributed to Cap Call the funds from each of the GMA Debits, by which the 90-Day Transfers were made. See Wishnev Declaration, ¶¶ 5-8.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 146 and therefore denies them.**

147.    The

GMA Service retained a portion of each GMA Debit as a service fee. *See* Leak Declaration, ¶ 5.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 147 and therefore denies them.**

148.    At the time the 90-Day Transfers were made through the GMA Debits, Cap Call was Network Salon's creditor under the Cap Call Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 148 and therefore denies them.**

149.    The 90-Day Transfers were made to or for the benefit of a creditor of Network Salon and were made on account of an antecedent debt owed by Network Salon to Cap Call.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 149 and therefore denies them.**

150.    The GMA Service Companies were Network Salon's initial transferees under 11 U.S.C. § 550(a)(1).

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 150 and therefore denies them.**

151.    Cap Call was the GMA Service Companies' immediate transferee under 11 U.S.C. § 550(a)(2).

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 151 and therefore denies them.**

152. The 90-Day Transfers were made while Network Salon was insolvent as Network Salon's liabilities exceeded its assets at all times during the ninety-day period preceding the Petition Date. In addition, 11 U.S.C. § 547(f) mandates a presumption of Network Salon's insolvency during the Preference Period.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 152 and therefore denies them.**

153. Based on the Trustee's investigation of Network Salon's affairs, unsecured creditors will not receive a 100% distribution on their claim. Therefore, Network Salon's payment to Cap Call of the 90-Day Transfers enabled Cap Call to receive more than it would have received under chapter 7 of the Bankruptcy Code if Network Salon had not made the 90-Day Transfers, and Cap Call received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 153 and therefore denies them.**

154. Cap Call may have received additional preferential transfers that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 154 and therefore denies them.**

155. The GMA Service Companies may have received additional preferential transfers that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 155 and therefore denies them.**

156.    The Trustee may avoid the 90-Day Transfers under 11 U.S.C. § 547(b).

**ANSWER:    Paragraph 156 states a legal conclusion to which no response is required.**

157.    The Trustee may recover the 90-Day Transfers from the GMA Service Companies as Network Salon's initial transferee under 11 U.S.C. § 550(a)(1).

**ANSWER: Paragraph 157 states a legal conclusion to which no response is required.**

158.    The Trustee may recover the 90-Day Transfers from Cap Call as the GMA Service Companies' immediate transferee under 11 U.S.C. § 550(a)(2).

**ANSWER: Paragraph 158 states a legal conclusion to which no response is required.**

<u>**COUNT II**</u>
**Constructive Fraudulent Transfer, 11 U.S.C. § 548(a)(1)(B)**
**Network Salon Agreements**
**GMA Service Companies and Cap Call**

159.    The Trustee repeats and realleges the allegations of paragraphs 1 through 158 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 158 as if fully set forth herein.**

160.    Through the execution of the First Network Salon Agreement, Network Salon incurred an obligation within two years of the Petition Date (the "Fraudulent Transfer Period").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 160 and therefore denies them.**

161.    In the First Network Salon Agreement, Network Salon incurred the obligation to pay $277,315 to Cap Call in exchange for a $185,000 MCA.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 161 and therefore denies them.**

162.    On account of the First Bathhouse Agreement, Network Salon fully paid $277,315 to Cap Call during the Fraudulent Transfer Period and Cap Call profited in the amount of at least $92,315.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 162 and therefore denies them.**

163.    Through the execution of the Second Network Salon Agreement, Network Salon incurred an obligation during the Fraudulent Transfer Period.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 163 and therefore denies them.**

164.    In the Second Network Salon Agreement, Network Salon incurred the obligation to pay $111,750 to Cap Call in exchange for a $75,000 MCA.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 164 and therefore denies them.**

165.    On account of the Second Network Salon Agreement, Network Salon paid at least $41,568 to Cap Call during the Fraudulent Transfer Period. A chart of the transfers is attached as Exhibit H.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 165 and therefore denies them.**

166.    Through the execution of the Third Network Salon Agreement, Network Salon incurred an obligation within the Fraudulent Transfer Period.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 166 and therefore denies them.**

167.    In the Third Network Salon Agreement, Network Salon incurred the obligation to pay $298,000 to Cap Call in exchange for a $200,000 MCA.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 167 and therefore denies them.**

168.    On account of the Third Network Salon Agreement, Network Salon paid at least $42,571 to Cap Call during the Fraudulent Transfer Period. A chart of the transfers is attached as Exhibit I.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 168 and therefore denies them.**

169.    During the Fraudulent Transfer Period, Network Salon received only three cash payments from Cap Call: (i) a $67,756.50 deposit to the Bathhouse Account on December 11, 2015; (ii) a $73,490.00 deposit to the Bathhouse Account on February 12, 2018, 2016; and (iii) a $59,965 deposit to the Bathhouse Account on March 15, 2016.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 169 and therefore denies them.**

170.    At the most, Network Salon received $201,211.50 in cash from Cap Call under the Network Salon Agreements. At the least, Network Salon paid Cap Call $361,454 (the "Network Transfers) and Network thus paid more than it received in the amount of at least $160,242.50 (the "Network Excess Payments").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 170 and therefore denies them.**

171.    Network Salon received inadequate consideration in exchange for the Network Transfers.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 171 and therefore denies them.**

172.    Network Salon received less than reasonably equivalent value in exchange for the obligations incurred under the Network Salon Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 172 and therefore denies them.**

173.    At the time Network Salon paid the Network Transfers, it: (a) was insolvent or became insolvent as a result of the transfers; (b) was engaged or was about to engage in a business or transaction for which its remaining property was an unreasonably small capital; or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 173 and therefore denies them.**

174.    The Network Transfers were made from and through the Bathhouse Account as payments on account of the Network Salon Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 174 and therefore denies them.**

175.    The GMA Service Companies initiated and collected each of the GMA Debits by which many of the Network Transfers were made.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 175 and therefore denies them.**

176.    The GMA Service Companies subsequently distributed to Cap Call the funds from each of the GMA Debits, by which many of the Network Transfers were made. *See* Wishnev Declaration, ¶¶ 5-8.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 176 and therefore denies them.**

177.    The GMA Service Companies retained a portion of each GMA Debit as a service fee. *See* Leak Declaration, ¶ 5.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 177 and therefore denies them.**

178.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Network Excess Payments are avoidable as fraudulent transfers.

**ANSWER: Paragraph 178 calls for a legal conclusion to which no response is required.**

179.    The GMA Service Companies may have received additional fraudulent transfers from Network Salon that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 179 and therefore denies them.**

180.    Cap Call may have received additional fraudulent transfer payments from Network Salon that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 180 and therefore denies them.**

181. Pursuant to 11 U.S.C §550(a)(2), the GMA Service Companies are Network Salon's initial transferees, and the Trustee may recover any avoided Network Excess Payments from them.

**ANSWER: Paragraph 181 states a legal conclusion to which no response is required.**

182. Pursuant to 11 U.S.C. § 550(a)(2), Cap Call is the GMA Service Companies' immediate transferee and the Trustee may recover any avoided Network Excess Payments from it.

**ANSWER: Paragraph 182 states a legal conclusion to which no response is required.**

<u>**COUNT III**</u>
**Actual Fraudulent Transfer, 11 U.S.C. § 547(a)(1)(a)**
**Bathhouse Agreements**
**ACH Capital, GMA Service Companies and Cap Call**

183. The Trustee repeats and realleges the allegations of paragraphs 1 through 182 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 182 as if fully set forth herein.**

184. Bathhouse never had any assets, operations, customers, transactions, income, or receivables of its own. At all times relevant, Bathhouse received all funds it transferred to Cap Call from or through Network Salon and was Network Salon's initial transferee under 11 U.S.C. § 550(a)(1).

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 184 and therefore denies them.**

185.    Prior to the execution of the First Bathhouse Agreement, Cap Call advised Ms. Hill to enter into its "Merchant Agreements" through Bathhouse so the Cap Call MCAs would not show up on UCC searches or credit reports for Network Salon. Thus, Network Salon would not appear to be in violation of any existing agreements not to pledge future receivables and would appear to have less debt than it actually had.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 185 and therefore denies them.**

186.    Prior to the execution of the First Bathhouse Agreement, Cap Call advised Ms. Hill to enter into its "Merchant Agreements" through Bathhouse and to open the Bathhouse Account, to conceal their existence from CAN Capital, another MCA Provider, whose agreement with Network Salon would be breached if Network Salon incurred additional debt or sold or pledged its future receivables.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 186 and therefore denies them.**

187.    Prior to the execution of the Fourth Bathhouse Agreement, Cap Call advised Ms. Hill to take the MCA in Bathhouse's name so LQD would not discover Network Salon's default under the LQD Loan Agreements.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 187 and therefore denies them.**

188.   Network Salon thus incurred obligations under each Bathhouse Agreement with actual intent to hinder, delay, or defraud existing or future creditors other than Cap Call.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 188 and therefore denies them.**

189.   Through the execution of the First Bathhouse Agreement, Bathhouse incurred an obligation during the Fraudulent Transfer Period.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 189 and therefore denies them.**

190.   In the First Bathhouse Agreement, Bathhouse incurred the obligation to pay $55,130 to Cap Call in exchange for a $37,000 MCA.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 190 and therefore denies them.**

191.   On account of the First Bathhouse Agreement, Bathhouse fully paid $55,130 to Cap Call during the Fraudulent Transfer Period and Cap Call profited in the amount of at least $18,130.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 191 and therefore denies them.**

192.    Through the execution of the Second Bathhouse Agreement, Bathhouse incurred an obligation within two years of the Petition Date.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 192 and therefore denies them.**

193.    In the Second Bathhouse Agreement, Bathhouse incurred the obligation to pay $89,400 to Cap Call in exchange for a $60,000 MCA.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 193 and therefore denies them.**

194.    On account of the Second Bathhouse Agreement, Bathhouse fully paid $89,400 to Cap Call during the Fraudulent Transfer Period and Cap Call profited in the amount of at least $29,400.

**ANSWER:   To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 194 and therefore denies them.**

195.    Through the execution of the Third Bathhouse Agreement, Bathhouse incurred an obligation within two years of the Petition Date.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 195 and therefore denies them.**

196.    In the Third Bathhouse Agreement, Bathhouse incurred the obligation to pay $163,900 to Cap Call in exchange for a $110,000 MCA.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 196 and therefore denies them.**

197.    On account of the Third Bathhouse Agreement, Bathhouse fully paid $163,900 to Cap Call during the Fraudulent Transfer Period and Cap Call profited in the amount of at least $53,900.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 197 and therefore denies them.**

198.    ACH Capital initiated and collected each of the ACH Capital Debits by which transfers on account of the First, Second, and Third Bathhouse Agreements (the "123 Transfers") were made.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 198 and therefore denies them.**

199.    The GMA Service Companies subsequently distributed to Cap Call the funds from each of the GMA Debits by which the 123 Transfers were made. *See* Wishnev Declaration, ¶¶ 5-8.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 199 and therefore denies them.**

200.    The GMA Service Companies retained a portion of each GMA Debit as a service fee. *See* Leak Declaration, ¶ 5.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 200 and therefore denies them.**

201.    In the Fourth Bathhouse Agreement, Bathhouse incurred the obligation to pay $112,425 to Cap Call in exchange for a $75,000 MCA.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 201 and therefore denies them.**

202.    On account of the Fourth Bathhouse Agreement, Bathhouse fully paid $112,425 to Cap Call during the Fraudulent Transfer Period and Cap Call profited in the amount of at least $37,425.

**ANSWER:    To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 202 and therefore denies them.**

203.    During the Fraudulent Transfer Period, at the most, Bathhouse received $282,000 from Cap Call under the Bathhouse Agreements. At the least, Bathhouse paid Cap Call $420,855 (the "Bathhouse Transfers") and Cap Call profited in the amount of at least $138,855 (the "Bathhouse Excess Payments").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 203 and therefore denies them.**

204.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Bathhouse Excess Payments are avoidable as actual fraudulent transfers.

**ANSWER: Paragraph 204 states a legal conclusion to which no response is required.**

205.    ACH Capital may have received additional fraudulent transfers from Bathhouse that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 205 and therefore denies them.**

206.    The GMA Service Companies may have received additional fraudulent transfers from Bathhouse that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 206 and therefore denies them.**

207.    Cap Call may have received additional fraudulent transfers from Bathhouse that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 207 and therefore denies them.**

208.    Pursuant to 11 U.S.C §550(a)(2), ACH Capital is Bathhouse's immediate transferee under the First, Second, and Third Bathhouse Agreements, and the Trustee may

recover avoided Bathhouse Excess Payments on the First, Second, and Third Bathhouse Agreements from it.

**ANSWER: <mark>Denied.</mark>**

209.    Pursuant to 11 U.S.C §550(a)(2), the GMA Service Companies are Bathhouse's immediate transferees under the Fourth Bathhouse Agreement, and the Trustee may recover avoided Bathhouse Excess Payments on the Fourth Bathhouse Agreement from them.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 209 and therefore denies them.**

210.    Pursuant to 11 U.S.C. § 550(a)(2), Cap Call is the mediate transferee of ACH Capital and the GMA Service Companies and the Trustee may recover any avoided Bathhouse Excess Payments from it.

**ANSWER: Denied.**

<u>**COUNT IV**</u>
**Constructive Fraudulent Transfer, 11 U.S.C. § 548(a)(1)(B)**
**Bathhouse Agreements**
**ACH Capital, the GMA Service Companies, and Cap Call**

211.    The Trustee repeats and realleges the allegations of paragraphs 1 through 210 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 210 as if fully set forth herein.**

212.    Bathhouse received inadequate consideration in exchange for the Bathhouse Transfers.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 212 and therefore denies them.**

213.    Bathhouse received less than reasonably equivalent value in exchange for the obligations incurred under the Bathhouse Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 213 and therefore denies them.**

214.    At the time Bathhouse made the Bathhouse Transfers, it: (a) was insolvent or became insolvent as a result of the Transfers; (b) was engaged or was about to engage in a business or transaction for which its remaining property was an unreasonably small capital; or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 214 and therefore denies them.**

215.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Excess Payments are avoidable as constructively fraudulent transfers.

**ANSWER: Paragraph 215 states a legal conclusion to which no response is required.**

216.    ACH Capital may have received additional constructively fraudulent transfers from Bathhouse that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 216 and therefore denies them.**

217.    The GMA Service Companies may have received additional constructively fraudulent transfers from Bathhouse that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 217 and therefore denies them.**

218.    Cap Call may have received additional constructively fraudulent transfers from Bathhouse that may be uncovered later.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 218 and therefore denies them.**

219.    Pursuant to 11 U.S.C §550(a)(2), ACH Capital is Bathhouse's immediate transferee under the First, Second, and Third Bathhouse Agreements, and the Trustee may recover any avoided Excess Payments made under the First, Second, and Third Bathhouse Agreements from it.

**ANSWER: Denied.**

220.    Pursuant to 11 U.S.C §550(a)(2), the GMA Service Companies are Bathhouse's immediate transferees under the Fourth Bathhouse Agreement, and the Trustee may recover any avoided Excess Payments made under the Fourth Bathhouse Agreement from them.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 220 and therefore denies them.**

221.    Pursuant to 11 U.S.C. § 550(a)(2), Cap Call is Bathhouse's mediate transferee and the Trustee may recover any avoided Excess Payments from it.

**ANSWER: Denied.**

<u>COUNT V</u>
**Restitution of MCA Proceeds**
**Network Salon and Bathhouse Agreements**
**ACH Capital, GMA Service Companies, and Cap Call**

222.    The Trustee repeats and realleges the allegations of paragraphs 1 through 221 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 221 as if fully set forth herein.**

223.    Bathhouse repeats and realleges the allegations of paragraphs 1-220 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 222 as if fully set forth herein.**

224.    The Bathhouse Agreements provide that Cap Call has purchased "Receipts," as defined therein, received as payment for sales of Bathhouse's goods or services.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 224 and therefore denies them.**

225.    The Bathhouse Agreements do not entitle Cap Call to the proceeds of either Bathhouse's or Network Salon's MCA transactions (the "MCA Proceeds"). The Bathhouse

Agreements purport to give Cap Call a claim only to funds received for Bathhouse's sales of goods and services.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 225 and therefore denies them.**

226.    The Network Salon Agreements provide that Cap Call has purchased "Receipts," as defined therein, received as payment for sales of Network Salon's goods or services.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 226 and therefore denies them.**

227.    The Network Salon Agreements do not entitle Cap Call to the MCA Proceeds. The Network Salon Agreements purport to give Cap Call a claim only to funds received for Network Salon's sales of goods and services.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 227 and therefore denies them.**

228.    Nevertheless, on account of the Cap Call Agreements and on a regular basis, Ms. Hill left funds advanced by Cap Call in the Bathhouse Account or transferred other MCA Proceeds into the Bathhouse Account to cover the GMA Debits.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 228 and therefore denies them.**

229.    ACH Capital withdrew the MCA Proceeds through the ACH Capital Debits and transferred them to Cap Call.

**ANSWER: Denied.**

230.    The GMA Service Companies withdrew the MCA Proceeds through the GMA Debits and transferred them to Cap Call.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 230 and therefore denies them.**

231. ACH Capital had no right to take MCA Proceeds.

**ANSWER: Denied.**

232.    The GMA Service Companies had no right to take MCA Proceeds.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 232 and therefore denies them.**

233.    Cap Call had no right to take MCA Proceeds.

**ANSWER: Denied.**

234.    The GMA Service Companies and Cap Call wrongfully took MCA Proceeds from the Bathhouse account.

**ANSWER: Denied.**

<u>**COUNT VI**</u>
**Restitution of Bathhouse Transfers**
**Bathhouse v. ACH Capital, the GMA Service Companies, and Cap Call**

235.   Bathhouse repeats and realleges the allegations of paragraphs 1 through 234 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 234 as if fully set forth herein.**

236.   Section 1.9 of each Bathhouse Agreement requires Bathhouse to sell products and services and to receive payment for them from its customers as the condition precedent to Bathhouse's obligation to pay Cap Call (the "Condition Precedent").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 236 and therefore denies them.**

237.   Bathhouse never sold products or services and never received payment from customers. Bathhouse had no products or services to sell and no customers from whom to receive payment.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 237 and therefore denies them.**

238.   The Condition Precedent to Bathhouse's obligation to pay Cap Call fails.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 238 and therefore denies them.**

239.   At all times relevant, Cap Call knew that Bathhouse had no products or services to sell and no customers from whom to receive payment.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 239 and therefore denies them.**

240.     Due to the failure of the Condition Precedent, Cap Call had no right to any payment under the Bathhouse Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 240 and therefore denies them.**

241.     Due to the failure of the Condition Precedent, neither ACH Capital nor the GMA Service Companies had the right to initiate NACHA Debits from the Bathhouse Account.

**ANSWER: Denied.**

242.     Due to the failure of the Condition Precedent, ACH Capital wrongfully and tortiously initiated the ACH Capital Debits from the Bathhouse Account and wrongfully and tortiously transferred the funds to Cap Call.

**ANSWER: Denied.**

243.     Due to the failure of the Condition Precedent, the GMA Service Companies wrongfully and tortiously initiated the GMA Debits from the Bathhouse Account and wrongfully and tortiously transferred the funds to Cap Call.

**ANSWER: Denied.**

244.     Due to the failure of the Condition Precedent, Cap Call wrongfully and tortiously took funds from Bathhouse and Network Salon in the total amount of at least $420,855.

**ANSWER: Denied.**

245.    Given Cap Call's prior knowledge that Bathhouse did not and could not satisfy the Condition Precedent, Cap Call could not have had any reasonable or justifiable expectation, or any expectation at all, that it would be entitled to repayment under the Bathhouse Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 245 and therefore denies them.**

246.    Cap Call induced Bathhouse to enter into the Bathhouse Agreements to conceal them from Network Salon's creditors and, thus, to commit fraud upon those creditors by siphoning funds from Network Salon through Bathhouse.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 246 and therefore denies them.**

247.    Ms. Hill, Bathhouse, and Network Salon were damaged by the wrongful and tortious conduct of ACH Capital, the GMA Service Companies, and Cap Call and that damage contributed substantially to Network Salon's failure.

**ANSWER: Denied.**

248.    ACH Capital may have wrongfully and tortiously taken additional funds from Bathhouse and Network Salon that may be uncovered later.

**ANSWER: Denied.**

249.    The GMA Service Companies may have wrongfully taken additional funds from Bathhouse and Network Salon that may be uncovered later.

**ANSWER: Denied.**

250.    Cap Call may have wrongfully and tortiously taken additional funds from Bathhouse and Network Salon that may be uncovered later.

**ANSWER: Denied.**

<u>**COUNT VII**</u>
**In the Alternative to Count VI**
**Restitution of Bathhouse Transfers**
**Trustee v. ACH Capital, the GMA Service Companies, and Cap Call**

251.    The Trustee repeats and realleges the allegations of paragraphs 1 through 250 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 251 as if fully set forth herein.**

252.    Section 1.9 of each Bathhouse Agreement requires Bathhouse to sell products and services and to receive payment for them from its customers as the condition precedent to Bathhouse's obligation to pay Cap Call (the "Condition Precedent").

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 252 and therefore denies them.**

253.    Bathhouse never sold products or services and never received payment from customers. Bathhouse had no products or services to sell and no customers from whom to receive payment.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 253 and therefore denies them.**

254.    The Condition Precedent to Bathhouse's obligation to pay Cap Call fails.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 254 and therefore denies them.**

255.    Due to the failure of the Condition Precedent, Cap Call had no right to any payment under the Bathhouse Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 255 and therefore denies them.**

256.    Due to the failure of the Condition Precedent, neither ACH Capital nor the GMA Service Companies had the right to initiate NACHA Debits from the Bathhouse Account.

**ANSWER: Denied.**

257.    Due to the failure of the Condition Precedent, ACH Capital wrongfully and tortiously initiated the ACH Capital Debits from the Bathhouse Account and wrongfully and tortiously transferred the funds to Cap Call.

**ANSWER: Denied.**

258.    Due to the failure of the Condition Precedent, the GMA Service Companies wrongfully and tortiously initiated the GMA Debits from the Bathhouse Account and wrongfully and tortiously transferred the funds to Cap Call.

**ANSWER: Denied.**

259.    Due to the failure of the Condition Precedent, Cap Call wrongfully and tortiously took funds from Bathhouse and Network Salon under the Bathhouse Agreements in the total amount of at least $420,855.

**ANSWER: Denied.**

260.    Given Cap Call's prior knowledge that Bathhouse did not and could not satisfy the Condition Precedent, Cap Call could not have had any reasonable or justifiable expectation, or any expectation at all, that it would be entitled to repayment under the Bathhouse Agreements.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 260 and therefore denies them.**

261.    Cap Call induced Bathhouse to enter into the Bathhouse Agreements to conceal them from Network Salon's creditors and, thus, to commit fraud upon those creditors by siphoning funds from Network Salon through Bathhouse.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 261 and therefore denies them.**

262.    Ms. Hill, Bathhouse, and Network Salon were damaged by the wrongful and tortious conduct of ACH Capital, the GMA Service Companies, and Cap Call and that damage contributed substantially to Network Salon's failure.

**ANSWER: Denied.**

## COUNT VIII
### Disallowance of Claims – 11 U.S.C. § 502(d)
### ACH Capital, the GMA Service Companies and Cap Call

263.    The Trustee repeats and realleges the allegations of paragraphs 1 through 262 as though fully set forth herein.

**ANSWER: ACH Capital incorporates its Answers from Paragraphs 1 – 262 as if fully set forth herein.**

264.    ACH Capital, the GMA Service Companies, and Cap Call are recipients of preferential and fraudulent transfers, avoidable pursuant to sections 547 and 548 of the Bankruptcy Code and recoverable under section 550 of the Bankruptcy Code.

**ANSWER: Paragraph 264 states a legal conclusion to which no response is required.**

265.    None of Cap Call, the GMA Service Companies, nor ACH Capital has paid the amount of the preferential transfers and constructive and actual fraudulent transfers or turned over such property for which they are liable under section 550 of the Bankruptcy Code.

**ANSWER: To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 265 and therefore denies them.**

266.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Cap Call, the GMA Service Companies, and ACH Capital against Network Salon must be disallowed until such time as they pay the Trustee the amount equal to the aggregate amount of all of the preferential Transfers and constructive and actual fraudulent transfers, plus interest thereon and costs.

**ANSWER: Denied.**

## PRAYER FOR RELIEF

WHEREFORE, Defendant ACH Capital respectfully request for the Court to dismiss

Counts I – VIII of Plaintiff's Complaint with Prejudice and provide such further relief as the

Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,

VARNUM LLP

By: _/s/ Brendan G. Best_____
       BRENDAN G. BEST  (P66370)
       WILLIAM L. THOMPSON  (P80123)
       160 W. Fort St., 5th Floor
       Detroit, MI  48226
       (313) 481-7326
       bgbest@varnumlaw.com

</div>

Dated:  April 9, 2018                       *Attorneys for Defendant*

## AFFIRMATIVE AND OTHER DEFENSES

Defendant states the following as its affirmative and other defenses to Plaintiff's Complaint:

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff may not avoid the transfers which are the subject to the Complaint as such transfers were intended by the Debtor and Defendant to be a contemporaneous exchange for new value given to the Debtor, and was in fact a substantially contemporaneous exchange, pursuant to Section 547(c)(1) of the Bankruptcy Code, 11 U.S.C. § 547(c)(1).

### SECOND AFFIRMATIVE DEFENSE

The Plaintiff may not avoid the transfers which are the subject to the Complaint as such transfers were made in payment of debts incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and Defendant and (i) were made in the ordinary course of business or financial affairs of the Debtor and Defendant, or (ii) were made according to ordinary business terms, pursuant to Section 547(c)(2) of the Bankruptcy Code, 11 U.S.C. § 547(c)(2).

### THIRD AFFIRMATIVE DEFENSE

The Plaintiff may not avoid the transfers which are the subject to the Complaint as, after such transfers, the Defendant gave new value to or for the benefit of the Debtor, which was not secured by an otherwise unavoidable security interest and on account of which new value the Debtor did not make an otherwise avoidable transfer to or for the benefit of Defendant, pursuant to Section 547(c)(4) of the Bankruptcy Code, 11 U.S.C. § 547(c)(4).

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff is estopped from asserting these claims because the transactions complained of benefited the Debtor and were affirmed and completed with the Debtor' knowledge, agreement or acquiescence.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff is precluded from asserting these claims under the doctrines of waiver, estoppel and/or laches.

## SIXTH AFFIRMATIVE DEFENSE

To the extent: (i) the Debtor or Plaintiff objected to any claim filed by Defendant; or (ii) Defendant has a scheduled claim, a valid proof of claim or is entitled to an administrative claim against the Debtor' estates, the Plaintiff may not avoid the transfers which are the subject to the Complaint, and Defendant expressly reserves its rights to setoff any of its claims against the alleged transfers.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that the transfers which are the subject to the Complaint were not transfers of an interest in the Debtor property, the Plaintiff may not avoid the transfers to Defendant.

## NINTH AFFIRMATIVE DEFENSE

To the extent the Debtor was solvent when the transfers which are the subject to the Complaint were made, such transfers do not constitute preferences and the Plaintiff may not avoid the transfers to Defendant.

### TENTH AFFIRMATIVE DEFENSE

To the extent that the transfers which are the subject to the Complaint were not made within the ninety (90) days prior to the Petition Date, such transfers do not constitute preferences and the Plaintiff may not avoid the transfers to Defendant.

### ELEVENTH AFFIRMATIVE DEFENSE

To the extent that the transfers which are the subject to the Complaint were a prepayment, such prepayments do not constitute a preference and the Plaintiff may not avoid the transfers to Defendant.

### TWELFTH AFFIRMATIVE DEFENSE

To the extent that some or all of the transfers which are the subject to the Complaint were in payment of a contract or agreement constituting an assumed executory contract, such transfers do not constitute preferences and the Plaintiff may not avoid the transfers to Defendant.

### THIRTEENTH AFFIRMATIVE DEFENSE

Debtor engaged in a comprehensive scheme to defraud its creditors, and as such is precluded from pursuing the claims contained above based on the doctrine of unclean hands.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendant did not receive more than a creditor would have in Chapter 7 proceedings.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendant reserves all rights of recoupment to the fullest extent possible.

### SIXTEENTH AFFIRMATIVE DEFENSE

No "transferred" occurred within the meaning provided by the Bankruptcy Code or applicable law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant was simply a payment processor and had no right, claim, or title to the transfers alleged by Plaintiff, thus, Defendant is not subject to an avoidance action under Section 547 of the Bankruptcy Code.

Defendant gives notice that it intends to rely upon any other defenses that may become available or apparent during discovery and reserves its right to assert any additional defenses.

WHEREFORE Defendant respectfully request that this Court dismiss the Complaint with prejudice.

Respectfully submitted,

VARNUM LLP

By: */s/ Brendan G. Best*
        BRENDAN G. BEST  (P66370)
        WILLIAM L. THOMPSON  (P80123)
        160 W. Fort St., 5th Floor
        Detroit, MI  48226
        (313) 481-7326
        bgbest@varnumlaw.com

Dated:  April 9, 2018          *Attorneys for Defendant*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re:

ANTHIA R. HILL, *et al.,*

       Debtors.

| | |
|---|---|
| | Chapter 7 |
| | Honorable Jacqueline P. Cox |
| | Case Nos. 16-17113 |
| | (Jointly Administered) |

FRANCES GECKER, not individually, but
solely in her capacity as chapter 7 trustee of the
bankruptcy estates of Anthia R. Hill and
Network Salon Services, LLC and
BATHHOUSE LUXURY IMPORTS, LLC,

       Plaintiffs,

v.

CAP CALL, LLC, a Delaware limited liability
company, ACH CAPITAL, LLC, a Delaware
limited liability company, GMA USA, LLC, a
Pennsylvania limited liability company, and
GMA MCA TRACKER, LLC, a Pennsylvania
limited liability company,

       Defendants.

Adv. No. 17-00066

**DEFENDANTS' ANSWER TO
PLAINTIFFS' AMENDED
ADVERSARY COMPLAINT**

## PROOF OF SERVICE

The undersigned certifies that on April 9, 2018, he served a copy of ***DEFENDANTS'
ANSWER TO PLAINTIFF'S AMENDED ADVERSARY COMPLAINT*** upon the following
individuals:

       Karen V. Newbury, Esq.
       FRANK GECKER LLP
       325 North LaSalle Street, Suite 625
       Chicago, Illinois 60654
       knewbury@fgllp.com

by electronically filing the foregoing with the ECF system.

       */s/ Brendan G. Best*

13395335_1.docx