# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANTHIA R. HILL, *et al.,* | ) | |
| | ) | Honorable Jacqueline P. Cox |
| Debtors. | ) | |
| ――――――――――――――――――― | ) | |
| | ) | Case No. 16-17113 |
| FRANCES GECKER, AS CHAPTER 7 | ) | (Jointly Administered) |
| TRUSTEE OF NETWORK SALON | ) | |
| SERVICES, LLC and ANTHIA R. HILL | ) | |
| | ) | Adversary Case No. 17-00066 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAP CALL, LLC, a Delaware limited liability | ) | |
| company, ACH CAPITAL, LLC, a Delaware | ) | |
| limited liability company, GMA USA, LLC, a | ) | |
| Pennsylvania limited liability company, and | ) | |
| GMA MCA TRACKER, LLC, a Pennsylvania | ) | |
| limited liability company, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| ――――――――――――――――――― | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on the 10th day of May 2018, at 10:00 a.m., or as soon as counsel may be heard, I shall appear before the Honorable Jacqueline P. Cox in Room 680 of the United States Bankruptcy Court, 219 S. Dearborn Street, Chicago, Illinois, 60604, and shall then and there present **Defendants Cap Call, LLC, GMA USA, LLC, and GMA MCA Tracker, LLC Motion to Dismiss Counts I through VII of Amended Complaint**, a copy of which is hereby served upon you.

Cap Call, LLC, GMA USA, LLC,
and GMA MCA Tracker, LLC

By: /s/ Abraham Brustein

Abraham Brustein, #0327662
Derek D. Samz, #6290656
DiMonte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
847/698-9600
847/698-9623 Facsimile
abrustein@dimontelaw.com
dsamz@dimontelaw.com

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, hereby certifies that on the 30th day of April, 2018, she duly served (or caused to be served) upon the persons on the attached service list by the court's electronic notification system, a copy of **Defendants Cap Call, LLC, GMA USA, LLC, and GMA MCA Tracker, LLC Motion to Dismiss Counts I through VII of Amended Complaint**, and this Notice.


<u>/s/ Jenna Jarke</u>


## Service List


### VIA ECF

Karen V. Newbury
Frank Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 606054
knewbury@fgllp.com
*Attorney for Chapter 7 Trustee*

Brendan G. Best
William L. Thompson
Varnum LLP
160 W. Fort St., 5th Floor
Detroit, MI 48226
Emails: bgbest@varnumlaw.com
        wlthompson@varnumlaw.com
*Attorneys for ACH Capital*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANTHIA R. HILL, *et al.,* | ) | |
| | ) | Honorable Jacqueline P. Cox |
| Debtors. | ) | |
| _____ | ) | |
| | ) | Case No. 16-17113 |
| FRANCES GECKER, AS CHAPTER 7 | ) | (Jointly Administered) |
| TRUSTEE OF NETWORK SALON | ) | |
| SERVICES, LLC and ANTHIA R. HILL | ) | |
| | ) | Adversary Case No. 17-00066 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAP CALL, LLC, a Delaware limited liability | ) | |
| company, ACH CAPITAL, LLC, a Delaware | ) | |
| limited liability company, GMA USA, LLC, a | ) | |
| Pennsylvania limited liability company, and | ) | |
| GMA MCA TRACKER, LLC, a Pennsylvania | ) | |
| limited liability company, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS CAP CAP, LLC, GMA USA, LLC AND GMA MCA TRACKER, LLC MOTION TO DISMISS COUNTS I THROUGH VII OF AMENDED COMPLAINT

Cap Call, LLC ("Cap Call"), GMA USA, LLC ("GMA"), and GMA MCA Tracker, LLC[1], being certainty of the Defendants in this Adversary Proceeding, by their undersigned attorneys, move pursuant to Rules 12(b)(c) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7012 of the Federal Rules of

---

[1] For purposes of this Motion, Defendants GMA USA, LLC and GMA MCA Tracker, LLC are collectively referred to as the "GMA Service Companies", the abbreviation used by Plaintiff in her Amended Complaint.

Bankruptcy Procedure, for entry of an order dismissing Counts I through VII of the Amended Complaint. In support of this motion, these Defendants state as follows:

1.     Frances Gecker is the Trustee of the estates of Anthia R. Hill ("Hill") and Network Salon Services, LLC ("Network Salon"). The two estates are subject to joint administration pursuant to an order entered on July 1, 2016. See Dkt. No.18 in Case No.16-17113.

2.     The Amended Complaint ("Complaint") joins Cap Call and the GMA Service Companies in each of the eight counts. The other Defendant, ACH Capital, has filed an answer to the Amended Complaint.

3.     Network Salon is in the business of selling beauty supplies (¶12). Cap Call is in the business of providing capital to small businesses that do not have access to capital from traditional banks. (¶59). Cap Call's transactions with its customers are Merchant Cash Advances that it refers to as "MCAs". (¶¶60-61) The terms of the MCAs are set forth in the transaction documents attached to the Complaint as Group Exhibits C and D.

4.      Bathhouse Luxury Imports, LLC ("Bathhouse") is an entity formed by Hill in May 2014. Apparently, Hill is the sole equity holder of Bathhouse.  (¶¶43-45) Bathhouse did not conduct any business operations and did not sell any goods or services. (¶¶71, 74)

5.     Bathhouse is the owner of a bank account no. 6289 at Fifth Third Bank ("Bathhouse Account"). (¶67)

6.     Between April 16 and October 1, 2015, Cap Call entered into four "Merchant Agreements" pursuant to which Cap Call provided MCA financing to Bathhouse. (¶67) The Bathhouse Agreements are attached to the Amended Complaint as Group Exhibit C.

7.      Cap Call entered into three Merchant Agreements with Network Salon between December 10, 2015 and February 10, 2016 ("Network Salon Agreement"). (¶¶99-100; Group Exhibit D)

8.      The transactions between Cap Call and both Bathhouse and Network Salon were structured as sales by each of them to Cap Call of a specified portion of their future receipts.

9.      Pursuant to all of the Merchant Agreements that are the subject of the Complaint, Cap Call provided immediate funding (designated as the "Purchase Price") for an assignment of a portion of future receipts that have a value equal to the "Receipts Purchased Amount". The merchant pays the Receipts Purchased Amount on a daily basis from a portion of its receipts that is expressed both as a percentage and a specific daily amount. Those payments are made through electronic transfers that the merchant authorizes in the underlying transaction documents ("NACHA Debits")(¶¶75-83; 100-119; Group Exhibits C and D).

10.     The GMA Service Companies have been Cap Call's servicing agents since September 2015. In that capacity they collect the daily transfers from the Bathhouse Account that have been made under color of the fourth Bathhouse Agreement and the three Network Salon Agreements. (¶¶132-136). Since September 2015, the GMA Service Companies collected from the Bathhouse Account the daily NACHA Debits (¶¶137-138)[2]. The GMA Service Companies performed its services on the Fourth Bathhouse Agreement and the three Network Salon Agreements. The NACHA Debits they processed were received in their account at Citizens Bank. (¶¶137-139)

11.     Given the spread between the Purchase Price and the Receipts Purchased Amount if the underlying transactions that are the subject of Bathhouse Merchant Agreements and

---

[2] Defendant ACH Capital was Cap Call's servicing agent prior to GMA Service Companies. ACH Capital was the servicing agent on the first three Bathhouse Agreements.

Network Salon Agreements are considered loans, those loans would be criminally usurious under New York statutes that are applicable to Cap Call's operations because its principal place of business is in New York.  (¶¶8, 67-98; 100-124)

12.   Cap Call funded the Bathhouse Agreements and Network Salon Agreements by depositing the net Purchase Price into the Bathhouse Account. (¶¶76, 85,108,115,120) Although the Trustee does not expressly allege where Cap Call deposited the net Purchase Price for the First, Second or Third Bathhouse Agreements, the only reasonable inference to be drawn from ¶¶ 75-81 is that those funds were deposited into the Bathhouse Account.

13.   In Count I, the Trustee seeks to avoid and recover all of the NACHA Debits paid to the GMA Service Companies pursuant to the Network Salon Agreements in the 90 days prior to the Petition Date as preferential transfers under §547(b).

14.   Count II relates to the three Network Salon Agreements.  The Trustee seeks to avoid and recover the amount by which the total of the NACHA Debits taken from the Bathhouse Account under the Network Salon Agreements in the two years prior to the Petition Date exceeds the amount of new funds Cap Call provided to Network Salon under those Agreements ("Network Excess Payments"). The Trustee seeks to avoid the Network Excess Payments pursuant to §548(a)(1)(B) claiming Network Salon did not receive reasonable equivalent value for those payments. (¶¶163-171)

15.   Count III relates to the four Bathhouse Agreements. The Trustee seeks to avoid and recover the amount by which the total of the NACHA Debits taken from the Bathhouse Account under the Bathhouse Agreements in the two years prior to the Petition Date exceeds the amount of new funds Cap Call provided to Network Salon under those Agreements ("Bathhouse Excess Payments"). (¶¶189-203) The Trustee claims the Bathhouse Excess Payments are

avoidable as an actual fraud fraudulent transfer pursuant to §548(a)(1)(A) because Network Salon was the source of the payments and made the payments with the actual intent to hinder, delay, or defraud its creditors[3].

16.     In Count IV, the Trustee seeks to recover the Bathhouse Excess Payments as constructively fraudulent under § 548(a)(1)(B). Count IV is based upon the same transfers and seeks the same damages as the claim asserted in Count III. Only the legal theory of recovery is different.

17.     In Count V, the Trustee brings  a common law claim for restitution both on her own behalf and on behalf of Bathhouse. The essence of the allegations in Count V is that both the Network Agreements and Bathhouse Agreements limit the amount those companies had to pay (i.e. the Receipts Purchased Amount) is limited to funds that Bathhouse or Network Salon received from the sale of their goods and services. Plaintiffs allege that the NACHA Debits transferred from the Bathhouse Account to ACH Capital and the GMA Service Companies were not derived from the sale of goods or services sold by either Network Salon or Bathhouse.

18.     Bathhouse, but not the Trustee, brings a claim for restitution in Count VI. The claim is analogous to the one asserted in Count V. Bathhouse asserts that its obligations to Cap Call under the Bathhouse Agreements are limited to funds it received from the sale of its goods or services after the funding date. In Count VI, Bathhouse asserts that because it never collected funds from the sale of its goods and services it had no obligation to pay the Receipts Purchased Amount. Therefore, the payments that were made through the NACHA Debits were wrongful. Notwithstanding the allegations of ¶¶222-234, and without explanation, in its prayer for relief in Count VI, Bathhouse seeks entry of judgments not in its favor, but in favor of the Trustee.

---

[3] Although the heading for Count III indicates the Trustee is proceeding under a preference theory under §547, it is clear that the Trustee is really proceeding under §548.

19.     Count VII is brought by the Trustee as an alternative to the claim in Count VI. The Trustee seeks restitution of all payments made from the Bathhouse account through the NACHA Debits for the same reasons asserted in Count VI. That is, Bathhouse's obligation to pay the Receipts Purchased Amount is limited to payments derived from the sale of goods or services. Because Bathhouse claims that it never sold any goods or services, Bathhouse claims it had no payment obligations.

20.     The only discernable difference between Counts VI and VII is that Bathhouse is the sole Plaintiff that purports to bring the claim for relief in Count VI (even though the prayer for relief requests entry of a judgment in favor of the Trustee), and the Trustee is the sole Plaintiff in Count VII.

21.     In Count VIII, the Trustee seeks disallowance of any claims filed by the GMA Service Companies and Cap Call until they have paid to the Estate any claims for which they are liable under §550. The Trustee relies on § 502(d) in bringing this claim for relief.  The relief requested in Count VIII is only available if the Trustee prevails in its bankruptcy causes of action in Counts I through IV.

**Argument**

**A.     Introduction**

Cap Call provides financing to small businesses through merchant cash advances. The terms of that financing are set forth in merchant agreements that are intended to be factoring transactions. Cap Call purchases the merchant's future receipts for a specified upfront payment designated in the transaction documents as the "Purchase Price." In return, the merchant pays Cap Call a specified portion of its future receipts on a daily basis until such time as the merchant has paid a specified higher amount (the "Receipts Purchased Amount") to Cap Call. The daily

6

payment is expressed both as a percentage ("Specific Percentage") and as an amount ("Daily Amount"). The daily payments are made by electronic transfers ("NACHA Debits") from the merchant's bank account to an account maintained by Cap Call's servicing agent. Here, all the NACHA Debits Plaintiffs seek to recover in Counts I through VII were made from Bathhouse's Account. The GMA Service Companies became Cap Call's servicing agent in or around September 2015. It received the NACHA Debits solely in its agent capacity, which is disclosed on the transaction documents.

In Counts I through IV, the Trustee brings bankruptcy causes of action under §§547, 548 and 550 on behalf of both bankruptcy estates. They are premised on the Merchant Agreements executed by either Network Salon or Bathhouse. The Trustee and Bathhouse together also bring state law claims for relief in Count V seeking restitution of all of NACHA Debits from the Bathhouse Account. Even though Bathhouse is a Plaintiff, the prayer for relief only seeks entry of judgment in favor of the bankruptcy estates in Count VI. Bathhouse, acting in its own right, makes a claim for restitution to recover all of the NACHA Debits taken from its bank account. Yet, Bathhouse requests a judgment only in favor of the Trustee. In Count VII, the Trustee, but not Bathhouse, brings a claim for restitution to recover all of the NACHA Debits taken from the Bathhouse Account. Count VII is pled as an alternative to Count VI.

**B.** **Bathhouse's claims in Counts V and VI must be dismissed for lack of subject matter jurisdiction.**

In Counts V and VI Bathhouse asserts state law causes of action to recover property wrongfully taken from it. The scope of the litigation in these counts, to the extent Bathhouse is seeking relief, is a dispute entirely among non-debtors. This Court does not have subject matter jurisdiction to adjudicate the dispute.

Subject matter jurisdiction of a bankruptcy court is derived from (i) the jurisdiction of the district court in 28 U.S.C. §1334 and (ii) 28 U.S.C. §157 which sets forth the limits of bankruptcy court jurisdiction in cases or proceedings referred to it. Pursuant to 28 U.S.C. §1334(b), that jurisdiction extends to "civil proceedings arising under title 11, or arising in or related to cases under title 11."

Bathhouse's claims do not fit into any of the three categories of jurisdiction. Clearly, the state law causes of action in Counts V and VI do not arise under title 11. Nor can these state law claims brought by a non-debtor be classified as "arising in" a case under title 11. A civil proceeding falls within the court's "arising in" jurisdiction if it relates to some administrative matter that can only arise within a bankruptcy case and which would have no independent validity outside of a bankruptcy case. *D.A. Elia Const. Corp. v. Damon & Morey, LLP,* 389 B.R. 314, 317 (WDNY, 2008)(" 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."); in *In re New Century TRS Holdings, Inc.,* 505 B.R. 431, 441 (Bankr. Del. 2014) the court formulated the standards as a ("a claim will 'arise in' a title 11 case if that claim, by its nature, and not the particular factual circumstance, could arise only in the context of a bankruptcy case.") See also *In re International Home Products, Inc.,* 491 B.R. 607 (Bankr. P.R., 2013)("a lawsuit is considered an action 'arising in' a case under title 11 if it would have no existence outside of bankruptcy even if it is not based on any right expressly created by title 11. Bathhouse could have brought its claims for relief in Counts V and VI directly against the Defendants in a non-bankruptcy forum. Its claims for relief do not arise in a case under title 11.

The Seventh Circuit construes the scope of "related to" jurisdiction narrowly. *In re FedPak Systems, Inc.,* 80 F. 3d 207, 213-14 (7th Cir. 1995); *Zerand-Bernal Group, Inc. v. Cox,*

23 F. 3d 159, 161 (7ᵗʰ Cir. 1994). *FedPak* summarized the test for determining whether a civil

proceeding is related to a bankruptcy as whether it "affects the property available for distribution

or the allocation of property among creditors." 80 F. 3d at 213. In coming to that conclusion, it

cautioned against taking a more expansive view of "related to" which would inevitably lead to

inappropriate expansion of the bankruptcy court's limited jurisdiction. *Id.* at 214. *FedPak* also

endorsed this circuit's rationale in *Zerand-Bernal* which "related to" jurisdiction is generally

limited to disputes by or against a debtor. *Id.,* citing *Zerand-Bernal,* 23 F. 3d at 161.

The claims that Bathhouse brings in its own right do not affect the bankruptcy estate or

the distribution to creditors. Neither Bathhouse nor the Trustee can take the position that

Bathhouse's recovery will eventually pass through to either bankruptcy estate. The Trustee has

not taken any action to declare Bathhouse to be the *alter ego* of either Hill or Network Salon or

to otherwise seek an adjudication that Bathhouse's legal separateness should be disregarded or

pierced.

Bathhouse is a co-plaintiff in Count V and the sole Plaintiff in Count VI. The bankruptcy

court does not have subject matter jurisdiction to hear a claim of a non-party in which a party

seeking relief is not a trustee, a debtor, or a creditor of a debtor. Bathhouse is none of the above.

The fact that Bathhouse's sole shareholder, Anthia Hill, is a debtor makes no difference. *See In

re Billingsley*, 238 B.R. 372, 375 (Bankr. C.D. Ill.)(2006))("a corporation may be a debtor in its

own right, but it may not jointly; seek relief with any other person, including a shareholder, r

director or officer.") ― The claims that Bathhouse alleges in the Complaint are ancillary to the

claims asserted by the Debtors. "Bankruptcy courts, however, do not have the power to exercise

ancillary jurisdiction. They are limited to the three types of jurisdiction specifically granted in

28 U.S.C. 157(a)." *In re Ha-Lo Industries, Inc.,* 330 B.R. 663, 672 (Bankr.N.D.Ill. 2005). In

9

*Ha-Lo Industries*, the court considered whether it possessed subject matter jurisdiction over a third party complaint filed by the defendants to an adversary proceeding against the officers and directors of the corporate debtor for indemnification. *Id.* at 666. The court held that a bankruptcy court cannot õwrite its own jurisdictional ticketö and exercise ancillary jurisdiction over claims that are not by or against the debtor, even where the ancillary claim arises out of a common nucleus of operative facts as claims over which the bankruptcy court does have jurisdiction. *See Id.* at 673. The same is true here; while Bathhouseøs claims allege *similar* facts to those alleged by the Debtors against their transferees, Bathhouse is not a debtor. Were Bathhouse even to prevail on its claims, any recovery would go to Bathhouse, not the Debtors. This court does not have jurisdiction over Bathhouseøs claims under 28 U.S.C. 157(a).

**C.      Counts I-VI And VII Should Be Dismissed Because They Do Not State A Claim On Which Relief Can be Granted To The Trustee or Bathhouse.**

**1.      All transfers the Trustee seeks to recover were made by Bathhouse, not either Debtor. The Trustee Can neither Avoid Nor Recover Those Transfers.**

All of the transfers that form the basis for claims for relief in Counts I through VII were initially made from Bathhouseøs bank account via a NACHA Debit to an account maintained by either ACH Capital or the GMA Service Companies. Bathhouse is not a debtor in a title 11 case. The Trustee serves as trustee in the separate, but jointly administered estates of Hill and Network Salon. There is no apparent connection between the Trustee and Bathhouse, other than Hilløs ownership of Bathhouse.

Presumptively, Bathhouse is the owner of the funds in its bank account. Illinois recognizes the principle that the record owner of a deposit account is presumed to have the right to use the funds in the account. *Weisberger v. Weisberger,* 2011 IL App (1st) 101557, ¶ 47, 954 N.E. 2d 282, 289 (1st Dist. 2011); *Multi-Clean Products, Inc. v. Kasper,* 3 Ill. App.3d 12, 15 (1st Dist. 1971)(õThe law presumes that a deposit, or the right to claim it, belongs to the person in

whose name it is found.ö); *In re Telesphere,* 167 B.R. 495, 502 (Bankr. N.D. Ill. 1994), *rev'd on other grounds,* 205 B.R. 535 (N.D. Ill. 1997)(öIllinois recognizes the general common law presumption that the party in possession of personal property, including money, holds title to that propertyö).

The facts surrounding Bathhouseøs status are correctly summarized in ¶¶43-46. Hilløs ownership interest in Bathhouse is property of her bankruptcy estate that the Trustee may administer. That principle cannot be leveraged into investing the Trustee with the right or authority to assert causes of action that belong to Bathhouse as an entity. The Trustee does not have any authority to act on behalf of Bathhouse. Perhaps the Trustee erroneously assumes that Bathhouse is a *de facto* debtor in a Title 11 case. Even if the Trustee has assumed managerial control over Bathhouse by administering Hilløs ownership of the shares of Bathhouse, the Trustee has not obtained authority to operate the business of Bathhouse or bring claims on behalf of Bathhouse. She has not sought authority to hire the same law firm that represents the Trustee in the jointly administered bankruptcy estates to also represent Bathhouse in recovering Bathhouseøs own proprietary claims. However, it appears that is exactly what she is doing.

The Trustee lacks standing to bring Counts I through IV. The facts alleged in the Complaint establish that Bathhouse made the payments to the GMA Service companies. Only Bathhouse can seek to recover those payments. As demonstrated above, the Trustee has no legal relationship to Bathhouse and cannot administer its assets. The Trustee alleges in Counts I, II and IV (¶¶ 150, 181, 200) that the GMA Service Companies were the initial transferees of the payments made by Network Salon, even though the payments were received from Bathhouseøs bank account. In those Counts and Count III, the Trustee simply pleads opposing legal conclusions as to the party that was initial transferee, which is insufficient to allege a cause of

action.   Regardless of which set of allegations the Trustee relies upon, the facts establish that Bathhouse made the payments with its own funds from its own bank account.   Therefore, only Bathhouse has standing to assert claims to recover those transfers.   The Trustee cannot assert those claims for Bathhouse.

The Trustee can only assert Bathhouses' claims if the Court disregards Bathhouse's separate existence from the Debtors.   The Trustee faces two problems in this regard.   First, the Complaint does not allege facts that demonstrate Bathhouse's separateness should be disregarded, and the Trustee does not seek that relief.   More importantly, as discussed in *Glick*, the Trustee cannot allege a claim to reverses-pierce Bathhouses' corporate veil.

All of the Trustee's claims for relief are premised upon the flawed assumption that she can administer Bathhouse's assets.   See *Fowler v. Shadel,* 400 F. 3d 1016, 1018 (7th Cir. 2005)("it is well settled that assets owned by a corporation **are not included** in the bankruptcy estate of an individual shareholder.")(emphasis added).   The Trustee's ability to administer Hill's equity interest in Bathhouse does not make her bankruptcy trustee of Bathhouse; nor does it authorize the Trustee to bring causes of action in the name of Bathhouse. The Trustee has no legal interest in the assets of Bathhouse. Those assets are not property of the Hill Estate.

The relationship of a Chapter 7 trustee of a debtor that owns the equity of a corporation and the non-debtor corporation was examined in *In Re Billingsley,* 338 B.R. 372 (Bankr. C.D. Ill. 2006). Just as shareholders of the corporation are not the owners of the corporation's assets, so to the trustee of the shareholder does not own the assets of the corporation. *Id.* at 375. After reviewing the applicable Illinois and Seventh Circuit authorities that recognize and uphold the separateness of a corporation and its shareholders in a bankruptcy context, *Billingsley* concluded that a debtor's shares become property of his bankruptcy estate. However, the corporate assets do

not. *Id.* at 376. Therefore, "the assets of a corporation may not be administered in the bankruptcy estate of an individual shareholder, officer, or director." *Id.*

The Trustee brings her claims in Counts I through V and VII as a representative of the jointly administered estates. However, all of the funds the Trustee seeks to recover for transfers made by and authorized by Bathhouse from the Bathhouse Bank Account. The Trustee merely assumes that Bathhouse has already been adjudicated to be an *alter ego* of Hill or that there has been an adjudication that Bathhouse should be legally and economically disregarded and should be considered to be part of Network Salon.

Similarly, the Trustee proceeds from the erroneous assumption that because Hill controlled the equity of both Bathhouse and Network Salon, the legal separateness of Bathhouse and Network Salon can be disregarded. If the Trustee believes that Bathhouse and Network Salon are legally or economically a single enterprise, she must obtain an adjudication that separateness should be disregarded. She has not done so.

In Counts I, II, and IV of the Complaint, for purposes of §550(a) recovery, the Trustee alleges that one of the Defendants was the initial transferee. If that is the case, Bathhouse, not the Debtor was the party that made the transfers that the Trustee seeks to avoid. The Trustee cannot bring avoidance claims without first establishing that Network Salon or Hill had a legal or economic interest in the property that was transferred. This applies to both the bankruptcy and state law causes of action.

Under §§ 547 and 548 the Trustee must first establish that the transfer subject to avoidance was of "an interest of the debtor in property". See 11 U.S.C. §547(b) and 11 U.S.C. §548(a)(1). The allegations of the Complaint demonstrate that the Trustee cannot meet that

13

threshold burden. The Trustee has not established that either Network Salon or Hill had an interest in the property that was transferred to the initial transferee.

### 2.  The Trustee cannot bring claims for relief on behalf of Bathhouse.

Throughout the Complaint, it appears that the Trustee is taking two related positions; either she can assert Bathhouse's causes of action as the Trustee of the Hill estate (Counts V, VI, and VII), or that she can ignore the legal separateness of Network Salon and Bathhouse (Counts I, II, III, and IV). Both positions are untenable.

First, with respect to the bankruptcy causes of action pled in Counts I through IV, the Trustee incorrectly assumes she has the authority to recover transfers initiated by Bathhouse from the Bathhouse Account.  Counts V through VII are state law claims.  The Trustee seeks a judgment in her favor on each of these claims. Bathhouse does not seek any judgment in its favor, even though Bathhouse is a plaintiff in counts V and VI.  In Counts V and VII, the Trustee asserts state law claims for relief for the benefit of the jointly administered estates based upon transfers that Bathhouse initiated from the Bathhouse Account.  In Count VI, the Trustee is not a plaintiff, but seeks entry of judgment in her favor on Bathhouse's cause of action.  Clearly, the Trustee is contending the bankruptcy estates can bring claims that belong to Bathhouse.  The Trustee has not alleged any facts that support that position.

The Trustee cannot simply ignore the legal separation between the Debtors and Bathhouse.  Similar attempts have been tried and rejected.  It is a fundamental legal principle that a corporation possesses a legal identity separate from the identity of its shareholders.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 625 (1983).  In *In re Glick*, 566 B.R. 634 (Bankr.N.D.Ill. 2017), the plaintiff trustee attempted to recover payments and transfers made by multiple corporations in which the individual debtor was the sole

14

shareholder. *Id.* at 641. The trustee alleged that the corporations were nothing more than the alter-egos of the debtor himself. *Id.* The *Glick* court engaged in an extensive analysis of the trustee's claims, alter-ego principles and underlying Illinois law. The *Glick* court rejected the trustee's claim that the debtor's Illinois corporation should not be considered an independent entity. The court found that Illinois courts have rejected the theory of "reverse-piercing" of the corporate veil. *Id*. at 663-64 (*citing In re Rehabilitation of Centaur Ins. Co.,* 158 Ill.2d 166, 173-74 (1994)). Reverse-piercing of the corporate veil allows creditors or a bankruptcy trustee of an individual shareholder to recover transfers made by the corporation. *See id.* at 659. The *Glick* court ultimately held that the trustee could not assert a reverse-piercing theory to recover transfers made by the non-debtor corporations and dismissed the trustee's claims. *Id.* at 664. The court further held that the trustee had also failed to adequately allege the elements of traditional claim to pierce the corporate veil. *Id.* The facts of this case require the same conclusion.

The Trustee's Complaint at Counts VI and VIII seems to rely on a reverse-piercing theory in asserting claims against Cap Call and its servicing company. The Complaint simply disregards any separation between the Debtor Anthia Hill, and Bathhouse, the entity in which she is the sole shareholder. Bathhouse is a limited liability company formed under the laws of Illinois, just as the targeted defendant entity in *Glick*. Under *Glick*, the Trustee cannot rely on the reverse-piercing theory to recover transfers made by Bathhouse. Furthermore, even if the reverse-piercing theory were an available avenue of recovery, the Complaint fails to adequately allege facts supporting any reason to apply the "stringently-applied exception" to the bedrock principle of separate corporate existence. *See Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co.,* 826 F.2d 725, 728 (7th Cir. 1987).

Two requirements must be met before an Illinois court will pierce the corporate veil: First, the plaintiff must establish that the shareholder dominated the corporation to the point that it had to separate existence and was effectively the shareholder's alter-ego; and second, that failing to ignore corporate identity and holding the shareholder liable would sanction a fraud or promote injustice. *See Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 205 (1981). The Complaint does not allege either requirement to establish a right to pierce the corporate veil. Instead, the Trustee simply proceeds to allege her claims as if the determination that the separateness between Debtor and Bathhouse has already been made in her favor. Here, as in *Glick*, the Trustee cannot rely on the presumption, and must actually allege facts in support of piercing the veil. As Illinois does not recognize the theory of reverse-piercing, there are no facts that the Trustee can allege that would entitle her to recovery. As such, the claims against Cap Call should be dismissed with prejudice.

**D.     The Trustee fails to differentiate whether she is bringing her claims for relief for the benefit of the Hill Estate or the Network Salon Estate.**

The Complaint is brought by a trustee of two separate, jointly administered estates and also by Bathhouse, a non-debtor entity which happens to be represented by the same lawyers that represent the Trustee. In each of Counts I through V and Count VII, the Trustee's prayer for relief seeks entry of a money judgment in her favor. However, she does not differentiate whether she is acting on behalf of the Estate of Hill or the Estate of Network Salon. Instead, she requests that the judgment be entered in her favor in both capacities.

The two bankruptcy estates are subject to joint administration, as authorized under Federal Rule of Bankruptcy Procedure 1015(b). An order authorizing joint administration does not break the wall of separation between the two separate bankruptcy estates. Yet, the Trustee

16

proceeds as if there is a single consolidated bankruptcy estate for whom she is acting as Plaintiff in this adversary proceeding. That simply is not the case.

The two distinct bankruptcy estates cannot be consolidated under Bankruptcy Rule 1015(a) because they do not involve the same debtor. No party in interest has sought substantive consolidation of the two bankruptcy estates. The Trustee should be required to identify the estate on which she is acting for each claim for relief in this adversary proceeding.

**E.    The Trustee fails to plead facts that enable her to recover on claims that belong to Bathhouse.**

As pointed out above, this court cannot adjudicate Bathhouse's claims.   The Trustee cannot administer Bathhouse as if it were a title 11 debtor. In bringing the bankruptcy causes of action in Counts I through IV, the Trustee is really attempting to bring bankruptcy causes of action on behalf of Bathhouse.   All of the transfers the Trustee seeks to avoid were made by Bathhouse with its own property. No facts are alleged that explain why the recovery from Bathhouse's state law causes of action belong to the Trustee. It is unclear what claims for relief Bathhouse brings in its own right and what claims for relief belong to the Trustee. This confusion is exemplified in Counts V and VI where Bathhouse is a plaintiff bringing state law claims, but the prayers for relief are all made solely for the benefit of the Trustee.   Plaintiffs have failed to establish how the Trustee and Bathhouse are legally related; how the Trustee's lawyers came to represent Bathhouse; and why the Trustee is entitled to any judgment that might be entered on a claim owned by Bathhouse. Plaintiffs should be required to file an amended complaint that clarifies when a claim is brought on behalf of the Hill estate, the Network Salon estate or Bathhouse as a non-debtor entity.

Respectfully submitted,

Cap Call, LLC, GMA USA, LLC,
and GMA MCA Tracker

By: /s/ Abraham Brustein
   One of their attorneys

Abraham Brustein, #0327662
Derek D. Samz, #6290656
DiMonte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
847/698-9600
847/698-9623 Facsimile
abrustein@dimontelaw.com
dsamz@dimontelaw.com